IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

COREY LEACH, *et al.*, individually and on behalf of all
others similarly situated,

                  Plaintiffs,

          v.

NBC UNIVERSAL MEDIA, LLC, *et al.*,

                  Defendants.

1:15-CV-07206 (LGS)



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/24/17

WILLIAM JUNE, individually and on behalf of all others
similarly situated,

                  Plaintiffs,

          v.

NBCUNIVERSAL MEDIA, LLC, *et al.*,

                  Defendants.

1:16-CV-01409 (VEC)

## [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES AND COLLECTIVES, FINAL APPROVAL OF PROPOSED SETTLEMENTS, APPROVAL OF ATTORNEYS' FEES AND LAWSUIT COSTS AWARD, REIMBURSEMENT OF CLAIMS ADMINISTRATOR FEES AND COSTS, AND APPROVAL OF SERVICE AWARDS

Plaintiffs Priamo Fermin, Neftali Pellot, Gary Phifer and William June[1] (together,

"Plaintiffs") worked as Parking Production Assistants ("PPAs") to secure sets, lots and streets on

production sites throughout the New York Metropolitan area during the course of various

---

[1] While Corey Leach and Anthony Jacob were named as Plaintiffs in the Leach action, after investigation it became
evident that neither worked on an NBC production and therefore they are not Class Representatives.

1

television and/or film productions for NBCUniversal Media, LLC ("NBCUniversal") and/or Media Rights Capital II, LP ("MRC"; together, "Settling Defendants").[2] On September 11, 2015, Plaintiffs Fermin, Pellot, and Phifer commenced *Leach, et al.* v. *NBCUniversal Media, LLC, et al.*, Case No. 15-cv-07206 ("*Leach*") against Defendant NBCUniveral, and on February 3, 2016, Plaintiff June commenced *June, et al.* v. *NBCUniversal Media, LLC, et al.* Case No. 16-cv-1409 ("*June*") against both Settling Defendants (*Leach* and *June* are hereinafter referred to as the "Litigations").[3]  Both actions are putative Class Actions under Federal Rule of Civil Procedure 23 and Collective Actions under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), claiming that Defendants failed to pay overtime wages to which Plaintiffs were entitled under the New York State Labor Law §§190 *et seq.*, as well as alleging violations under the Wage Theft Prevention Act § 195 ("NYLL") (collectively, the "Claims").   Settling Defendants deny the allegations and contend that at all times they have complied with the FLSA and NYLL, and that Plaintiffs' claims are not suited for class and collective treatment, other than in the context of these proposed Settlements.

In the course of the Litigations, each Party has conducted its own analysis regarding: (1) the viability and likelihood of class certification and collective action treatment; (2) the likelihood of success on the merits of the Claims; (3) the relative strengths and weaknesses of each Party's legal positions; and (4) the risks, including the potential exposure, associated with the Litigations.  *See* Decl. of Sara Wyn Kane in

---

[2] This Order only applies to NBCUniversal and MRC.  The other Defendants named in the *Leach* action are not addressed in this Order.

[3] On October 16, 2015, November 9, 2015, and February 2, 2016, in case 15-cv-7206, Amended Complaints were filed to correctly identify the various parties.  The sum and substance of the allegations, however, remained identical.

Support of Plaintiffs Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Kane Decl.") ¶ 7. To facilitate settlement discussions, the Parties have exchanged voluminous data and documents, and have conducted legal analyses and factual investigation concerning the Plaintiffs' claims, Defendants' defenses, and alleged damages. *See* Kane Decl. ¶ 9.

On July 7, 2016, the Parties engaged in an all-day mediation before this Court. Kane Decl. at 11. At the mediation, the Parties ultimately agreed on the terms of the NBCUniversal Settlement subject to Court approval. Kane Decl. ¶ 11. Shortly thereafter, the Parties agreed on the terms of the MRC Settlement. Kane Decl. ¶ 12. Between July 2016 and October 2016, the Parties negotiated the remaining terms of the Settlements, which were memorialized in formal Settlement Stipulations executed by the Parties on or about December 14, 2016. *Id.*

On February 15, 2017, this Court entered an Order preliminarily approving the Settlements on behalf of the classes set forth therein (the "Class" or the "Class Members"), conditionally certifying the Settlement Classes, appointing Valli Kane & Vagnini LLP ("VKV") as Class Counsel, Priamo Fermin, Neftali Pellot, and Gary Phifer, as Class Representatives, KCC Class Action Services, LLC ("KCC") as Claims Administrator, and authorizing notice to all Class Members. ECF No. 299 in *Leach* and No. 116 in *June.*

On March 28, 2017, KCC sent Court-approved notices to 776 Class Members in the NBCUniversal Settlement and to 38 Class Members in the MRC Settlement informing them of their rights under the Settlements, including the right to opt out or object to the Settlements, and of Class Counsel's intention to seek up to one-third of the qualified

settlement funds ("QSFs") for attorneys' fees.  KCC Decl. ¶ 11.  There were no objections to the Settlements, and no Class Member has opted out. *Id.* ¶ 19.

On August 8, 2017, Plaintiffs filed an Unopposed Motion for Certification of the Settlement Classes and Collectives, Final Approval of the Proposed Settlements, Approval of Attorneys' Fees and Lawsuit Costs Award, Reimbursement of Claims Administrator Expenses and Costs, and Approval of Service Awards ("Motion for Final Approval").  Settling Defendants do not oppose the Motion.

The Court held a fairness hearing on August 23, 2017.  [No Class Member objected to the settlements at the hearing.]

Having considered the Motion for Final Approval and the supporting declarations, the oral argument presented at the fairness hearing, and the record in this matter, for the reasons set forth therein and stated on the record at the fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**<u>CERTIFICATION OF THE SETTLEMENT CLASSES</u>**

1.      As to NBCUniversal, the Rule 23 Settlement Classes and FLSA Settlement Collectives are defined as follows:

> *Leach* Rule 23 Settlement Class – All individuals who worked as PPAs on television, digital, or web productions produced by NBCUniversal and filmed or taped in the NY metropolitan area, including those set forth on Exhibit A to the NBCUniversal Settlement Stipulation, from September 11, 2009 through April 16, 2016;

> *June* Rule 23 Settlement Class – All individuals who worked as PPAs on film productions produced by NBCUniversal and filmed in the NY metropolitan area, including those set forth on Exhibit A to the NBCUniversal Settlement Stipulation, from

February 23, 2010 through April 16, 2016;

*Leach* FLSA Settlement Collective – All individuals who worked as PPAs on television, digital, or web productions produced by NBCUniversal and filmed or taped in the NY metropolitan area, including those set forth on Exhibit A to the NBCUniversal Settlement Stipulation, from September 11, 2012 through April 16, 2016; and

*June* FLSA Settlement Collective – All individuals who worked as PPAs on film productions produced by NBCUniversal and filmed in the NY metropolitan area, including those set forth on Exhibit A to the NBCUniversal Settlement Stipulation, from February 23, 2013 through April 16, 2016.

2.      As to MRC, the FLSA Settlement Collective and Rule 23 Settlement Class is defined as follows:

Rule 23 Settlement Class – All individuals who worked as PPAs on Ted 2 from February 23, 2010 through April 16, 2016; and

FLSA Settlement Collective – All individuals who worked as PPAs on *Ted 2* from February 23, 2013 through April 16, 2016.

3.      Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

4.      Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(l) because there are approximately 776 Rule 23 Class Members in the NBCUniversal Settlement and almost 40 Rule 23 Class Members in the MRC Settlement, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members….").

5.      The proposed Settlement Classes also satisfy Federal Rule of Civil Procedure 23(a)(2), the commonality requirement.  Plaintiffs and the Class Members share common issues of fact and law, including whether Settling Defendants failed to pay them overtime

wages in violation of state wage and hour laws and/or failed to keep accurate time records of the hours they worked. *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay).

6.     Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' wage and hour claims arise from the same alleged factual and legal circumstances that form the basis of Class Members' Claims. *See Hernandez v. Merrill Lynch & Co., Inc.,* No. 11 Civ. 8472, 2013 WL 1209563 , at *3 (S.D.N.Y. Mar. 21, 2013) (typicality satisfied where "[p]laintiffs' [overtime] claims arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris,* 859 F. Supp. 2d at 616 (same).

7.     Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Plaintiffs' and Class Members' interests are at odds. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F2d 285, 291 (2d Cir. 1992); *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467,  473 (S.D.N.Y. April 29, 2013) (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *accord Diaz v. Eastern Locating Service Inc.,* No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010).

8.     In addition, Plaintiffs' Counsel also meet the adequacy requirement of Rule 23(a)(4). VKV attorneys have "extensive knowledge in litigating wage and hour collective and class actions such as this, are familiar with the complex factual and legal questions at issue in this Litigation, and have and will continue to adequately represent the Plaintiffs and members of the Settlement Class in a comprehensive and vigorous manner." *Kudo v. Panda Express* 7:09-

cv-00712 (S.D.N.Y. June 26, 2015) Dkt. No. 309 at 3; *see also Indergit v. Rite Aid,* 1:08-cv-09361, Dkt. 239 at 40 (S.D.N.Y. Sept. 26, 2013), Dkt. No. 239 at 40 (finding it "clear that counsel is qualified and able to conduct the litigation").

9.      Plaintiffs also satisfy Rule 23(b)(3).   Plaintiffs' common factual allegations and legal theory - that Settling Defendants violated federal and state wage and hour laws by failing to pay them for overtime hours - predominate over any factual or legal variations among Class Members' claims.  *See Torres v. Gristede's Corp.,* No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay [,]" and "[t]his issue predominates over any individual calculations of overtime wages").

10.     Class adjudication of these two cases is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually.  *See Beckman,* 293 F.R.D. at 473.

## APPROVAL OF THE SETTLEMENTS AS TO THE RULE 23 CLASSES

11.     The Court hereby grants the Motion for Final Approval and finally approves the Settlements as set forth in the Settlement Stipulations.

12.     Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the "negotiating process leading to the settlement."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

13.     Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Coils. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

***Procedural Fairness***

14.     The proposed Settlements are procedurally fair because they were reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation ... [and] enlisted the services of an experienced employment [law] mediator"); *Diaz*, 2010 WL 5507912, at *4.

15.     Class Counsel conducted thorough investigations, evaluated the claims and defenses, and engaged in targeted discovery with Settling Defendants. The Parties reached the Settlements after months of negotiations and a day-long mediation before this Court. Kane Decl. ¶ 11.

16.     At the conclusion of the mediation, the Parties had reached an agreement in principal with respect to the claims against NBCUniversal. Shortly thereafter, the Parties reached an agreement in principal with respect to the claims against MRC. During the next several months, the Parties negotiated the remaining terms of the Settlement Stipulations. *Id.* These arm's-length negotiations involved counsel and this Court, which is well-versed in wage and hour law, "rais[ing] a presumption that the settlement they achieved meets the requirements of due process." *See Wal-Mart Stores*, 396 F.3d at 116; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010).

17.     In addition, "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *5(S.D.N.Y. October 2, 2013); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 1021I, 2011 WL 2208614, at *10 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement). The Parties here have acted responsibly in reaching early settlements. *See In re Interpublic Sec. Litig.*,  No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004).

*Substantive Fairness*

18.    To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).

19.    The Settlements are substantively fair. All of the factors set forth in *Grinnell,* which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

20.    The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

21.    Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

22.    The Settlement Classes' reaction to the settlements was positive. Pursuant to the Preliminary Approval Order, notice was sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The notices sent to Class Members included an explanation of the basis for the Settlements and an estimate of each Class

Members' Estimated Settlement Payment.  The notices also informed Class Members of their right to object to or exclude themselves from the Settlements and explained how to do so. Finally, static websites were maintained for all Settlement Class Members to access the relevant documents, including the Settlement Stipulations, in *Leach* and *June*, and an explanation of the formula utilized to calculate each Class Member's Estimated Settlement Payment.  Reminder Postcard was mailed to any Class Members who had not yet submitted a Claim Form. The Court finds that the notice process fairly and adequately advised Class Members of the terms of the Settlements, as well as the right to opt out of or to object to the Settlements, and to appear at the fairness hearing conducted on August 23, 2017.   Class Members were provided with the best notice practicable under the circumstances.

23.     The Court further finds that the notices and their distribution comported with all constitutional requirements, including those of due process.

24.     No Class Member opted out of the settlements and no objections were received.

25.     Moreover, while often there is a somewhat significant percentage of Class Members who do not return a Claim Form, here in the NBCUniversal Settlement almost 50% of Class Members did return Claim Forms, and in the MRC Settlement approximately 74% of Class Members returned Claim Forms, which represents a substantial and positive response from the Settlement Classes.   This overwhelmingly favorable response demonstrates that the Settlement Classes approve of the Settlements, which further supports final approval. *In re Elec. Books Antitrust Litig.,* 639 F. App'x 724, 727 (2d Cir. 2016) ("As to factor two, [the

Court] concluded that the class implicitly approved the settlement, observing that "[t]here have been under the circumstances few exclusions and few objections.").[4]

26.    The Parties have completed enough discovery to knowledgeably recommend Settlement.  When evaluating the level of discovery completed, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Prasker v. Asia Five Eight LLC,* 08 Civ. 5811(MGC), 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010); *Mills v. Capital One, N.A.*, No. 14 Civ. 1937 HBP, 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015).  The Parties here have engaged in targeted discovery to assess the claims and calculate potential damages in advance of the mediation.  Settling Defendants have produced voluminous data and documents to Plaintiffs.  Kane Decl. at 9.  The third *Grinnell* factor weighs in favor of final approval.

27.    The risk of establishing liability and damages further weighs in favor of final approval.  "Litigation inherently involves risks." *Clem v. Keybank, N.A.*, No. 13 Civ. 789 (JCF), 2014 WL 2895918, at *6 (S.D.N.Y. June 20, 2014).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F.  Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  Here, Plaintiffs faced numerous risks as to both liability and damages, including proving that Settling Defendants' pay practices violated the law and overcoming Settling

---

[4] *See, e.g., Acevedo v. Workfit Med. LLC,* 187 F. Supp. 3d 370, 380 (W.D.N.Y. 2016) (Court finds approximately 21% of eligible class members opting into the settlement, be a high participation rate for a "claims made" settlement agreement; *citing to Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52 (D.Me.2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less."). See also *Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, *18-19 (S.D.N.Y. Nov. 30, 2010) ((7% claim rate)); *See also*; Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291–94 (2008) (surveying 21 opt-in FLSA cases and finding average participation rate to be 15.71%).

Defendants defenses.  The proposed Settlements eliminate this uncertainty.  The fourth and fifth factors therefore weigh in favor of final approval.

28.     The risk of obtaining collective and class certification and maintaining both through trial is also present.  Contested collective and class certification motions would likely require extensive discovery and briefing, potential decertification briefing, and appeals.  Settlement eliminates the risk, expense, and delay inherent in the litigation process.  The sixth *Grinnell* factor weighs in favor of final approval.

29.     Even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178 n.9).  Therefore, the seventh *Grinnell* factor is neutral and does not preclude the Court from granting final approval.

30.     The substantial amount of the Settlements weighs in favor of final approval.  The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein,* 464 F.2d 689,693 (2d Cir. 1972)).  Here, according to Plaintiffs' calculations, the NBCUniversal Settlement provides Class Members with the equivalent of 100% of their alleged overtime damages and 55% of their alleged liquidated damages after attorneys' fees, administrative fees, employer payroll taxes, and service awards, and the MRC Settlement provides Class

13

Members with the equivalent of 100% of their alleged overtime damages and the equivalent of 67% of their alleged liquidated damages after payment of employer payroll taxes and attorneys' fees. These are significant amounts that weigh in favor of approval.[5] *See Hyun v Ippudo USA Holdings,* 2016 WL 1222347 at 2 (S.D.N.Y. Mar. 24, 2016) (approving settlement in which class members would receive approximately 51% of their back wages as fair and reasonable, "based on the immediacy of payment with a cash settlement and the litigation risks associated with proceeding to trial").

31.     Additionally, Settling Defendant NBCUniversal has taken steps to review and enhance certain of its policies and practices. The eighth and ninth *Grinnell* factors strongly weigh in favor of final approval.

32.     The Court hereby approves the Settlements as to the Rule 23 classes, as set forth in the Settlement Stipulations.

## APPROVAL OF THE SETTLEMENTS AS TO THE FLSA COLLECTIVES

33.     Because a collective action under the FLSA requires individuals to opt in before they are bound (rather than opt out in order not to be bound, as in the Rule 23 class action context), "settlement of a collective action does not implicate the same Due Process concerns as the settlement of a class action," and therefore is subject to less searching scrutiny. *Lizondro-Garcia v. Kefi LLC,* 300 F.R.D. 169, 179 (S.D.N.Y. 2014). In most cases, a settlement that meets the standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under the FLSA. *Id.* The Court should "therefore focus on the standards of Rule 23" when deciding whether to approve a class settlement agreement.

---

[5] For those individuals who did not work overtime but whose claims were solely a result of the Wage Theft Prevention Act claims, their recovery is a percentage of those damages. However, in the absence of overtime claims, there would be a significant debate among the parties regarding the viability of those claims.

*Riedel v. Acqua Ancien Bath New York LLC*, No. 14 CIV. 7238 (JCF), 2016 WL 3144375, at *6 (S.D.N.Y. May 19, 2016).

34.     In these cases, the Settlements were the result of vigorous arm's-length settlement negotiations.   Kane Decl. ¶ 11.   During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Accordingly, and based on the assessments set forth above in the *Grinell* factors analysis, the Settlement Stipulations resolve clear and actual disputes under circumstances supporting a finding that the Settlements are fair and reasonable.

35.     The Court hereby approves the Settlements as to the FLSA collectives, as set forth in the Settlement Stipulations.

## AWARD OF ATTORNEY FEES AND COSTS, ADMINISTRATION FEES, AND SERVICE AWARDS

36.     In assessing a request for attorneys' fees Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, ... counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,  . . . counsel's knowledge of the applicable law, and ... the resources counsel will commit to representing the class.") *See Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (internal quotation marks omitted); Federal Rule of Civil Procedure 23(g).

37.     Class Counsel are experienced and well-qualified employment lawyers. *See Kudo v. Panda Express,* 7:09-cv-00712 (S.D.N.Y.) (noting that "Plaintiffs' counsel have experience in this type of case, and have succeeded in negotiating an award that has real value for the class members....") (Dkt # 309 at 3); *Indergit v. Rite Aid,* 1:08-cv-09361 (S.D.N.Y) (granting certification and denying decertification and stating that "[i]t is clear that counsel is

qualified and able to conduct the litigation") (Dkt# 239 at 40).

38.    The work that Class Counsel has performed in litigating and settling these cases demonstrates their commitment to the Settlement Classes and to representing the Settlement Classes' interests. Class Counsel have committed substantial resources, time and attention to prosecuting these Litigations and achieving a successful resolution.

39.    The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Wal-Mart Stores*, 396 F.3d at 121; *Yuzary*, 2013 WL 5492998, at *9; *Diaz*, 2010 WL 5507912, at *7. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Beckman*, 293 F.R.D. 477; *McMahon,*2010 WL 2399328, at *7. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "The lodestar creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores,* 396 F.3d at 121.

40.    Here, while Class Counsel spent significant time investigating the claims, meeting with over 100 potential Class Members, collecting and reviewing thousands of pages of data determining potential damages, preparing for and participating in the mediation, negotiating the Settlements, and resolving extensive disputes pertaining to the terms of the Settlement Stipulations, the cases were resolved relatively early in the arc of the Litigations. Class Counsel should not be penalized by a reduction of their fee request, but rather rewarded for the extent and expediency of the recovery for the Settlement Classes that they have achieved. "The percentage method better aligns the incentives of plaintiffs' counsel with those of the class

members because it bases the attorneys' fees on the result they achieve for their clients, rather than on the number of motions they file, documents they review or hours they work." *See Wal-Mart*, 396 F.3d at 121.

41.    Additionally, "fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Hernandez*, 2013 WL 1209563, at *8 (internal quotation marks and citation omitted). The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *McMahon*, 2010 WL 2399328, at *7; *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

42.    Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Beckman*, 293 F.R.D. 477; *see also Hernandez*, 2013 WL 1209563, at *8. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id; see Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

43.    In class actions, class members often choose not to avail themselves of the recovery obtained on their behalf. Class Counsel should not be penalized for the decision of those individuals and the percentage of the fees should be based on the QSF total available. "An attorney who recovers a common fund for the benefit of others is entitled to 'a reasonable attorney's fee from the fund as a whole.'" *In re Tyco*, 535 F. Supp.

2d at 265 (*quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, (1980)).  There are many reasons why Class Members may choose not to actively participate by responding to notice of a settlement.  Here, Class Members were informed that they did not need to return a Claim Form in order to receive a Settlement Check.  Despite this fact, 50% of NBCUniversal Class Members and 74% of MRC Class Members did in fact submit Claim Forms to affirmatively indicate their desire to participate. All Class Members will receive Settlement Checks.

44.     Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany 522 F. 3d 182* (2nd Cir. 2008) does not address a common fund fee petition, it supports Class Counsel's request for one third of the fund in attorneys' fees because "'reasonable, paying client[s]' ... typically pay one-third of their recoveries under private retainer agreements." *Reyes v. Altamarea Group, LLC*, 2011 WL 4599822, at \*8 (S.D.N.Y., August 16, 2011).  While *Arbor Hill* is not controlling, it supports use of the percentage of the fund method.

45.     No Class Member objected to Class Counsel's request for 1/3 of the QSFs, which also provides support for Class Counsel's fee request.

46.     All of the factors in *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.  See Plaintiffs' Unopposed Motion at 45.

47.     Further, courts in the Second Circuit routinely grant attorney fees of one-third in wage and hour cases.  *See Garcia v. Atlantico Bakery Corp.*, No. 13 CIV. 1904 (JCF), 2016 WL 3636659 (S.D.N.Y. June 29, 2016) (citing *Torres v. Gristede's Operating Corp.*, 519 Fed.Appx. 1, 5 (2d Cir. 2013) ("1/3 of the total award is the customary contingency percentage

in FLSA cases"); *see also Clem v. Keybank, N.A.*, No. 13 CIV. 789 JCF, 2014 WL 2895918, at

*9 (S.D.N.Y. June 20, 2014) ("Class Counsel's request for 33% of the [$3,500,000] fund is

reasonable and consistent with the norms of class litigation in this circuit.") (internal quotations

and citations omitted).[6]

48.     Applying the lodestar method as a "cross check," the Court finds that the

fee that Class Counsel seeks is reasonable.   "Courts regularly award lodestar multipliers

of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*,

293 F.R.D. 481 (citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged

up to 19.6 times lodestar); *Sewell v. Bovis Lend Lease, Inc.*, 09 CIV. 6548 (RLE), 2012 WL

1320124, at *13 (S.D.N.Y. April 16, 2012)("Courts commonly award lodestar multipliers

between two and six." (citations omitted)); *see, e.g., Yuzary*, 2013 WL 5492998, at *11

(awarding multiplier of 7.6 in wage and hour misclassification class action); *Davis*, 827 F.

Supp. 2d at 185-86 (awarding multiplier of 5.3 in wage and hour class action); *Maley v. Del*

*Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan.   29, 2002) ("modest

multiplier" of 4.65 in class action was "fair and reasonable").   Here, Class Counsel are

seeking a lodestar multiplier of approximately 2.7 in NBCUniversal and no multiplier in

MRC. This is well within the range of multipliers that have been granted by courts in this

---

[6] Pertinently, it is in line with the fee awards in this circuit for FLSA/state law wage and hour cases; *see Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, slip op (S.D.N.Y. Oct. 11, 2011) (one third of $42 million settlement fund in FLSA and state wage and hour case). *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-CV-3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Circuit"); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) (Stein, D.J.) ("a fee that is one-third of the fund is typical" in FLSA cases).

Circuit and elsewhere.

49.     The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC,* No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).   In wage and hour cases, Class Counsel is often called upon to perform work after the preliminary and even final approval hearing. *See* Kane Decl. ¶ 36.  The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Diaz,* 2010 WL 5507912, at *7.

50.     Additionally, here Class Counsel is not seeking their costs in addition to the 1/3 sought in attorney's fees.  Courts typically allow counsel to recover their reasonable out-of-pocket expenses.  *See In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y.   2003).    Here, Class Counsel's unreimbursed expenses, including court and  process server fees, postage and courier fees, transportation, working meals, photocopies, and electronic research are reasonable and  were incidental and necessary to the representation of the Settlement Classes and are incorporated into the fee requested.  Kane Decl. at FN 7.

51.     In assessing the reasonableness of a request for attorneys' fees, the Court must also look to the recovery obtained.   Here, the recovery for the NBCUniversal Settlement Classes is equivalent to of 100% of their alleged overtime damages plus 55% of their alleged liquidated damages after attorneys' fees, administrative fees, employer payroll taxes and service awards, and for the MRC Settlement Classes the recovery is equivalent to 100% of their alleged overtime damages and 67% of their alleged liquidated

damages after employer payroll taxes and attorneys' fees. Thus, Class Counsel's request for 1/3 of the QSFs is reasonable and "consistent with the norms of class litigation in this circuit." *Yuzary*, 2013 WL 5492998, at *10 (internal quotation marks and citation omitted). After fees are granted, the Settlements will remain "fair, adequate and reasonable." *See Grinnell*. This significant recovery for the Settlement Classes justifies awarding Class Counsel the fees requested.

52.     For the reasons set forth herein, Class Counsel should be commended for obtaining a substantial recovery for the Settlement Classes, and accordingly the Court hereby awards Class Counsel 1/3 of the QSF in each of the settlements.

53.     The attorneys' fees shall be paid from the respective QSFs.

## ADMINISTRATION FEES

54.     On February 15, 2017 the Court preliminary approved the Settlement Administration Fees for these Settlements and preliminarily appointed KCC as the Claims Administrator in these actions.

55.     As a successor to Gilardi and in their own right, KCC is an experienced administrator of class action settlements nationwide. See Declaration of Bernella Osterlund of KCC in support of Plaintiffs' Unopposed Motion.

56.     The Court has preliminarily approved Claims Administrator Fees and Costs of $30,000.

57.     KCC has indicated that their final requested administrative fees are $32,610 with a $4,000 discount for a final fee of $28,610, which the Court herein approves as it is consistent with the administrative fees that have been awarded in similar settlements in this District. *See Flores, et al. v. K.C. 53 LLC, et al.*, No. 12-cv-8095 (S.D.N.Y. Sept. 16, 2013).

58.     The Court confirms the appointment of KCC as the Claims Administrator.

59.     The Claims Administrator Fees and Costs shall be paid from the NBCUniversal QSF.

## SERVICE AWARDS

60.     Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]."   *Yuzary,* 2013 WL 5492998, at *12 (quoting *McMahon,* 2010 WL 2399328, at *9) (internal quotation marks omitted).   "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary,* 2013 WL 5492998, at *12 (citing *Massiah v. MetroP/us Health Plan, Inc.,* No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

61.     The Court finds that Service Awards for Class Representative(s) Priamo Fermin, Neftali Pellot, Gary Phifer and William June, and opt-in Plaintiffs Raynier Delgadillo, Gary Luc and Christian Pellot in the amount of $5,000 each are reasonable.   These amounts shall be paid from the NBCUniversal QSF.

## CONCLUSION

62.     The Court Orders that:

   a.     The terms of these Settlements are fair, reasonable and adequate and in the best interests of the Settlement Classes.

   b.     Priamo Fermin, Neftali Pellot, Gary Phifer and William June, are appointed as representatives of the Settlement Classes;

c.    Valli Kane & Vagnini LLP are appointed as Class Counsel to represent the Settlement Classes under Fed. R. Civ. P 23 and Section 216 (b) of the FLSA;

d.    Class Counsel's Attorneys' Fees and Lawsuit Costs Awards are approved;

e.    The Service Payments are approved;

f.    The "Effective Date" of the Settlements shall be 35 days after the date of this Order if no party appeals this Order. If any party appeals this Order, the Effective Date of the Settlement(s) shall be the date on which all appeals (including, *inter alia*, petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally adjudicated and this Order can no longer be appealed or reviewed.

g.    This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

h.    Within 20 days after the Effective Date, the Claims Administrator shall distribute the funds in the QSFs by making the following payments:

(1)    Paying Administrator $28,610 from the NBCUniversal QSF;

(2)    Paying Class Counsel one-third of the NBCUniversal QSF ($1,422,000) and one-third of the MRC QSF ($1,288.89);

(3)    Paying service awards to Class Representatives Priamo Fermin, Neftali Pellot, Gary Phifer and William June, and opt-

in Plaintiffs Raynier Delgadillo, Gary Luc and Christian Pellot in the amount of $5,000 each from the NBCUniversal QSF; and

(4)     Paying the remainder of the QSFs, after deducting NBCUniversal's and MRC's respective share of payroll taxes, to Class Members in accordance with the allocation plan described in the Settlement Stipulations and further explained in Exhibit C of the KCC Decl.

i.     The Claims Administrator shall pay NBCUniversal's and MRC's payroll taxes in connection with their respective settlements in a timely fashion.

j.     The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Stipulations and overseeing the distribution of QSFs. The Parties shall abide by all terms of the Settlement Stipulations, which are incorporated herein, and this Order.

k.     Upon the Effective Date, *June* shall be dismissed with prejudice in its entirety as the settlement against all Defendants has been approved, and all Rule 23 Class Members who have not excluded themselves from the settlement and all FLSA Class Members who have opted in to the lawsuit and/or who cash their Settlement Checks shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the NBCUniversal Settlement and MRC Settlement.

l.     Upon the Effective Date, *Leach* shall be dismissed with prejudice only as against NBCUniversal, as defined herein, in the Motion and in the

24

corresponding Settlement Stipulation, and all Rule 23 Class Members who have not excluded themselves from the settlement and all FLSA Class Members who have opted in to the lawsuit and/or who cash their Settlement Checks shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the NBCUniversal Settlement.

m.   Upon the Effective Date, the dismissal of plaintiffs' claims against PTown Productions LLC in the *Headlam, et al. v. Twentieth Century Fox Film Corporation*, Civil Action No. 16-cv-01408 (KPF), matter shall be converted from a dismissal without prejudice to a dismissal with prejudice.

n.   In accordance with the terms and definitions contained in the NBCUniversal Settlement Stipulation, all Class Members release all Released Claims against the NBCUniversal Released Parties.

o.   In accordance with the terms and definitions contained in the MRC Settlement Stipulation, all Class Members release all Released Claims against the MRC Released Parties.

It is so ORDERED this 24th day of August, 2017.

Honorable James C. Francis IV
United States Magistrate Judge

25